IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**JAMES DAVID SMITH**                                                                                **PLAINTIFF**

**V.**                                                                                              **CAUSE NO. 1:19-CV-213-DAS**

**BNSF RAILWAY COMPANY**                                                   **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [Docket 63] and the Motion to Exclude Testimony of Plaintiff's Expert Tyler Kress [Docket 65] filed by Defendant BNSF Railway Company. Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion. Docket 11. After reviewing the parties' submissions, the record, and the applicable law, the court finds the Motion for Summary Judgment should be granted and consequently finds the Motion to Exclude moot.

**I. Introduction**

This is a negligence action under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq*., brought by Plaintiff James David Smith ("Smith") against Defendant BNSF Railway Company ("BNSF"). This action centers around an incident that occurred on February 26, 2019, while Smith was working for BNSF as a track inspector. As a track inspector, Smith was responsible for physically inspecting all portions of the track, including the derails, at least once per month to ensure everything was working correctly. Smith Depo. 40:21-41:5. If any equipment was not functioning properly, he was required to take it out of service or request that it be repaired. *Id*. at 41:6-9.

Smith's Complaint alleges that on February 26, 2019, he was "operat[ing] an unsafe, defective, and broken derail" when he sustained "severe injuries to his back."[1] Docket 1 at 1. He testified that while attempting to "flop" the derail from the engaged to disengaged position, "something caught" mid-movement, aggravating a pre-existing low-back condition. Smith Depo. 137:6-9; 138:20-23. The Complaint states this particular derail was previously "severely damaged" on June 12, 2018, when a train crew of the Alabama and Gulf Coast Railway (AGR) failed to disengage the derail causing the unintended derailment of two railcars. Docket 1 at 2. Smith's supervisor ordered a new derail to replace the damaged derail, however it was not installed until after Smith's injury. *Id*.

Smith contends his injuries were caused by BNSF's negligence in failing to provide a reasonably safe workplace, reasonably safe equipment, and the necessary and proper supervision. *Id*. at 2-3. He further claims BNSF was negligent in failing to replace the damaged derail when the new derail arrived.

## II. Motion for Summary Judgment

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a motion for summary judgment, the movant has the initial burden of showing the

---

[1] A "flop derail" is "a safety device designed to prevent rail cars from proceeding down the tracks past the point of the derail, so that when the derail is engaged workers and other rail equipment can be on the tracks beyond that point without being exposed to the danger of a rail car inadvertently coming into the work zone and striking them. The flop derail is a hinged device, with the portion on one side of the hinge being staked to cross ties between the rails and the other, movable, portion turning on the hinges and 'flopping' to the desired position, either on the track or 'in the dirt' (disengaged)." Docket 64 at 1-2.

absence of a genuine issue of material fact. *Id*. at 325. Under Rule 56(e), the burden then shifts to the non-movant to go beyond the pleadings and "by ... affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324. That burden is not discharged by mere allegations or denials. Fed.R.Civ.P. 56(e).

While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Celotex Corp.,* 477 U.S. at 322. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### B. FELA

The Federal Employer's Liability Act ("FELA") allows recovery of damages for personal injuries to an employee of a railroad if the injuries resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, by reason of any defect or insufficiency, due to its negligence." 45 U.S.C. § 51. "To prevail under FELA, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." *Weaver v. Mo. Pac. R.R. Co.*, 152 F.3d 427, 429 (5th Cir. 1998) (cleaned up) (citation omitted). Such negligence exists if the railroad "knew, or by the exercise of due care should have known" that its conduct was "inadequate to protect [the plaintiff] and similarly

situated employees." *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 417 (5th Cir. 2012) (internal citation omitted).

Under the Act, a railroad will be liable if its negligence or its agent's negligence played any part, even the slightest, in producing the plaintiff's injury. *Armstrong v. Kansas City Southern R. Co.*, 752 F.2d 1110, 1113 (5th Cir.1985). However, "[w]here the employee is guilty of negligence and his negligence is the sole cause of the accident, the railroad may not be held liable." *Seymour v. Ill. Cent. R. Co.*, 25 F.Supp.2d 734, 738 (S.D. Miss. 1997). "Failure to anticipate negligence on the part of the plaintiff is not actionable negligence on the part of the railroad." *Id.* (citing *Dixon*, *Atlantic Coast Line R. Co. v. Dixon,* 189 F.2d 525, 527 (5th Cir.1951)).

Although the employee "has a less demanding burden of proving causal relationship" in a negligence action under the Act, he is not excused from establishing "all the same elements as are found in a common law negligence action," namely: negligence on the part of the employer, causation, and damages. *Armstrong*, 752 F.2d at 1113. Specifically, Smith retains the burden of proving that BNSF, "with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury; foreseeability is 'an essential ingredient' of negligence under the Act." *Id*. (quoting *Nivens v. St. Louis Sw. Ry. Co.*, 425 F.2d 114, 118 (5th Cir. 1970)).

Under FELA, a plaintiff's burden of proof has been described as "featherweight," *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 506 (5th Cir. 2004), and a plaintiff's FELA claim should be dismissed on summary judgment "'only when there is a complete absence of probative facts'" supporting the plaintiff's position. *Gray v. Ala. Great S. R.R. Co.*, 960 F.3d 212, 216 (5th Cir. 2020) (brackets omitted) (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).

### III. DISCUSSION

In its motion, BNSF argues Smith (1) has failed to establish BNSF's actual or constructive knowledge of any alleged defect in the flop derail and (2) has failed to prove the use of flop derails is not reasonably safe. In response, Smith argues that BNSF is liable under a negligence per se theory, however, Smith's Complaint asserts no such claim.[2]

#### A. Knowledge

As a preliminary matter, BNSF contends that Smith has failed to adduce any competent evidence that the flop derail was actually defective. Despite the damage to the derail on June 12, 2018, Smith testified that on the morning following the accident, "it seemed like it was functioning correctly" so he put it back in service. Smith Depo. 112:18-24. On the "seven or so times" Smith inspected the derail between June 2018 and February 2019, he "didn't have an issue […] with flopping it over."[3] *Id*. at 116:13-20. In fact, Smith testified that the damaged derail was "safe and effective" for use, and had he determined otherwise, he would have been "obligated to take it out of service." *Id*. at 125:7-23.

Nevertheless, Smith argues BNSF was negligent for failing to replace the damaged flop derail with either a split rail derail[4] or a newer model flop derail. He contends the "best evidence

---

[2] The Fifth Circuit has taken two approaches in evaluating claims raised for the first time in response to a motion for summary judgment. *Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021). The first approach concludes that such a claim is not properly before the court. *Id*. (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)). The second approach treats the new claim as a request for leave to amend under Federal Rule of Civil Procedure 16(b)(4). *Id*. Here, Smith's negligence *per se* claim is not properly before the court. Smith has not requested leave to amend. Even if the court treats his briefing as a request to amend, Smith cannot establish good cause required for modifying the scheduling order at this stage in the litigation.
[3] *See also, id*. at 117:23-118:5 ("Q. […] [B]etween June of 2018 and February of 2019 when you, as the track inspector, on six or seven different monthly occasions went out to check this derail damaged by the derailment, you were able to flop it without difficulty? A. Once a month, those times, yes."); 123:9-20 ("Q. And during the six or seven times that you flopped the derail on the south end of the Columbus yard between the derailment in June of '18 and this event in February of '19, you didn't have any difficulty flopping the derail? A. No, I didn't have any problems operating that derail. Q. Didn't cause you to have back pain. A. No. Q. Didn't exacerbate your underlying back pain. A. No.").
[4] The briefs and deposition testimony refer to this type of derail as a "split rail derail," "switch point derail," and "split point derail." The court will use the term "split rail derail" for consistency.

that the flop derail was damaged is to look at the picture of the derail after it was hit by the locomotive" and "compare that picture to one of the replaced flop derail." Doc. 71 at 17. However, the parties do not dispute whether the derail was damaged in June 2018. Instead, because Smith is alleging negligence, the question is whether it was reasonably foreseeable that the June 2018 damage to the derail's flange could cause Smith's injury when he lifted the derail and the hinge allegedly caught. To this end, BNSF argues that it "had no actual or constructive knowledge that there was anything wrong with the hinge of the derail, much less that it would hang-up in the middle of a flopping operation." Doc. 64 at 10. According to BNSF, this lack of knowledge that the derail's condition would injure an employee performing the flopping operation precludes liability.

While FELA imposes a duty to take reasonable precautions to inspect the workplace and protect its employees from possible harm, Smith still carries the burden of proving some act of negligence on BNSF's part. *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998). To meet this burden, Smith must provide "evidence to show that an earlier inspection would have revealed or cured the problem with the [flop derail], or that the railroad had *notice* of the defect prior to the accident." *Id.*[5] (emphasis added).

Although Smith makes much of BNSF's failure to replace the damaged flop derail prior to his injury, Smith has not established that BNSF had notice that the flop derail was defective or

---

[5] In *Deans v. CSX Transportation, Incorporated*, the plaintiff was injured while operating a hand brake on a railcar. *Deans*, 152 F.3d at 328. A post-injury inspection of the hand brake demonstrated that it was defective. *Id*. The plaintiff argued an earlier inspection of the hand brake would have prevented his injury and claimed the defendant was negligent in failing to provide him with a safe workplace. *Id.* at 330. The court found the plaintiff "introduced no evidence to show that an earlier inspection would have revealed or cured the problem with the hand brake, or that the railroad had notice of the defect prior to the accident." *Id*. Because any suggestion that the defendant was negligent "rest[ed] on mere speculation and conjecture," summary judgment was upheld on the plaintiff's FELA claim. *Id*. As discussed herein, BNSF's regular *pre-* and *post-*injury inspections of the derail failed to reveal any defect or irregularity.

would malfunction in any way. Nor has Smith produced any evidence that the damage to the flop derail would lead inexorably to the hinge "catching" mid-movement while attempting to flop the derail from the engaged to disengaged position. Rather, the evidence supports the opposite conclusion: BNSF was repeatedly notified that despite the damage caused by the June 2018 derailment, the flop derail was in working order and functioned as intended.

In addition to Smith's testimony about the condition and functionality of the flop derail prior to his alleged injury, William Henderson, BNSF roadmaster, testified the derail "was never on the 30-day list for repairs" because it "worked as intended." Henderson Depo. 24:11-20. Henderson explained that track-related issues are entered in the computer system "as a defect" and must be repaired within 30 days under federal law. *Id*. 42:5-23. Despite monthly physical inspections, Henderson testified the flop derail at issue was never identified as a defect or cataloged in the computer system as such. *Id*. at 42:20-25.

Smith and Henderson both testified that AGR personnel continued to utilize the derail between June 2018 and February 2019 without incident. Smith Depo. 129:20-130:1; Henderson Depo. 40:10-15. Even Smith's expert, Tyler A. Kress, Ph.D., testified he was not aware of any evidence that anyone was injured when operating the derail in the eight months following the June 2018 derailment up to the date of Smith's alleged injury. Kress Depo. 163:17-23.[6]

---

[6] Dr. Kress did not identify any defect to the hinge portion of the derail but instead speculated that prior damage the flange or inadequate spiking *could* cause the hinge to bind or snag as Smith alleges. Kress Depo. 87:2-22. However, Kress contradicts this opinion when he subsequently testified that "*you would not expect* that at that – that particular tear when it – when the – that – that component of the derail is so-called airborne would cause the snag […] So this thing gets used over time and the distorted and bent metal and – *can affect* the way all of the components fit together over time." *Id*. at 88:20-89:7 (emphasis supplied). When asked if the damage to the flange "played some part in the snag during the flopping process performed by Mr. Smith" allegedly causing his injury, Kress responded, "not during the actual process" and elaborated that he did not believe the tear "snagged physically on something" in the process of being flopped. *Id*. at 89:25-90:16.

The day after Smith's injury, Henderson inspected and operated the flop derail with Jack A. Hendrix, another BNSF employee. Henderson Depo. 33:7-34:14. Henderson threw the derail to determine "if it was actually inoperable or unsafe to do" and "in [his] opinion it was not." *Id*. at 34:12-14. Jack Hendrix threw the derail twice and testified it was operational and in "working order," and he had no problems flopping it over. Hendrix Depo. 13:11-20; 14:1-5; 21:4-7. Hendrix did not observe any problem with the derail and testified that the flange lined up properly with the rail like it was supposed to. *Id*. at 13:21-25; 14:6-10. Even Dr. Kress was unable to "reproduce the resistance, catch, snag, hang up or bind" Smith described as causing his injury noting specifically that his post-injury inspection never produced "an unsuspecting binding or catch." Kress Depo. 173:25-174:10.

The evidence clearly establishes BNSF's *pre- and post*-injury inspections of the derail failed to reveal any defect or irregularity. Regardless of whether the June 2018 derailment rendered the derail defective, there is simply no evidence that BNSF had any knowledge that the condition of the derail would or might result in a mishap and injury such that it was required to replace it. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703, 131 S. Ct. 2630, 2643, 180 L. Ed. 2d 637 (2011) ("[i]f a person has no reasonable ground to anticipate that a particular condition ... would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition") (internal citation omitted).

At best, Dr. Kress's opinion that "the derail *may* have been in a condition such that is [sic] could be 'flopped' over onto the rail and appear as if it is performing adequately, but its condition is such that eventually it *can and may* not flop properly and snag resulting in a risk that an employee's back *may* 'pop'" describes a latent defect of which BNSF had no knowledge. *See* Docket 65-6 at 4-5 (emphasis added). This is made even more clear when it is understood hat the

derail was "performing adequately" as all *pre- and post*-injury inspections indicated. *Id*. Thus, any suggestion that BNSF was negligent in failing to detect any defect with the derail's hinge rests on "mere speculation and conjecture" and is insufficient to overcome summary judgment. *Deans*, 152 F.3d at 330 (upholding summary judgment even when post-injury inspection revealed defect where there was no evidence that an earlier inspection would have revealed or cured the defect).

Moreover, as track inspector, it was Smith himself who was responsible for inspecting assets on the track, including the derail at issue, to ensure they were working properly, requiring him to physically handle the equipment to make sure it was functioning correctly. Smith Depo. 40:20-41:15; 47:10-24; 107:16-21. If any piece of equipment was not working properly, *Smith* could take it out of service or take some remedial action to restore the equipment to working order. *Id*. He testified he felt adequately trained to perform the job of track inspector, was confident he knew what he was doing, and had a "great deal of experience." *Id*. at 93:7-15; 130:7-11. As discussed herein, Smith regularly inspected the subject derail and determined it was "safe and effective" for use. *Id*. at 125:7-23. He testified that he did not take it out of service because it was fully operational on each inspection. *Id*.

> The Federal Employer's Liability Act
>
> does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents, or employees of the employing carrier, or by reason of any defect or insufficiency, due to its negligence, in its property or equipment.

*Illinois Cent. R. Co. v. Skaggs*, 240 U.S. 66, 69–70, 36 S. Ct. 249, 250, 60 L. Ed. 528 (1916). Stated differently, "where the employee is guilty of negligence and his negligence is the sole cause of the accident, the railroad may not be held liable." *Seymour v. Illinois Cent. R. Co.*, 25 F.

Supp. 2d 734, 738 (S.D. Miss. 1997), *aff'd*, 154 F.3d 418 (5th Cir. 1998). To the extent Smith was negligent in inspecting the derail or in deciding to keep it in service after the June 2018 derailing incident, such negligence is not attributable to BNSF. *Id*. (finding a railroad is not negligent for failing to anticipate plaintiff's negligence) (citing *Dixon*, 189 F.2d at 527). BNSF is only required to exercise reasonable care and prudence to ensure that the equipment used by its employees is "reasonably suitable and safe for the purpose, and in the circumstances, in which [it is] to be used." *Atl. Coast Line R. Co. v. Dixon*, 189 F.2d 525, 527 (5th Cir. 1951).

In the end, Smith has failed to establish that BNSF had any reasonable ground to anticipate that the torn metal on the derail's flange would cause the device to malfunction while switching it from the engaged to disengaged position. In fact, despite the obvious and uncontested damage to the derail, the evidence establishes that the only knowledge BNSF had with respect to the hinged portion of the derail was that it functioned as intended based on Smith's own monthly inspections of the equipment. Because it was not reasonably foreseeable that the derail's condition could cause Smith to be injured while switching it from the engaged to disengaged position, BNSF was not negligent in failing to replace it.

### B. Unsafe Equipment

Smith's Complaint alleges BNSF "failed to furnish [him] with reasonably safe equipment with which to perform his assigned duties, […] [and] failed to warn [him] of reasonably foreseeable hazardous conditions existing with [BNSF's] equipment." Docket 1 at 3. Smith specifically claims BNSF was negligent in failing to replace the derail with a split rail derail or with a newer model flop derail with a permanent handle.

To the extent Smith is arguing that the type of flop derail at issue is not reasonably safe thus making BNSF negligent for utilizing this type of equipment, Dr. Kress's testimony

disproves such a theory. In his deposition, Dr. Kress denied any suggestion that BNSF was negligent for using a flop derail as opposed to another allegedly safer alternative:

> Q. Do you agree with me, Dr. Kress, that a properly installed, a properly inspected and a properly maintained ground-level flop derail is a safe piece of equipment to be used by a railroad company?
> A. I can't speak for all flop – flop derails that may exist. There may be some that – you know – these portable ones that weigh hundreds of pounds in the past but, generally speaking, yes.
> […]
> Q. Are you suggesting that somehow BNSF was negligent in this case because they were using a flop derail on this piece of track as opposed to one of these other alternatives that you think might be safer?
> A. No.

Kress Depo. 140:10-17; 144:1-14.

Smith's focus on BNSF's failure to install a replacement derail is misplaced as "the mere existence of other alternatives does not establish negligence on the part of the railroad." *Seymour*, 25 F. Supp. 2d at 738. Whether BNSF was in possession of a different type of derail and for how long has no bearing on the question of whether BNSF had actual or constructive knowledge of any defect with the derail at issue. A railroad "is not required to furnish the employee the latest, best, or most perfect appliances with which to work, or to discard standard appliances already in use upon the discovery of later improvements, provided those in use are reasonably safe and suitable." *Dixon*, 189 F.2d at 527; *Seymour*, 25 F. Supp. 2d at 738. "The test is not whether the tools to be used and the place in which the work is to be performed are absolutely safe, nor whether the employer knew the same to be unsafe, but whether or not the employer has exercised reasonable care and diligence to make them safe." *Dixon*, 189 F.2d at 527.

Again, Smith has failed to create an issue of fact sufficient to overcome summary judgment as to the reasonable care and diligence BNSF exercised with regard to the flop derail.

Further, his own expert's testimony defeats any claim that BNSF was negligent in utilizing a flop derail as opposed to a different type of derail.

IV. **Conclusion**

Ultimately, Smith has failed to put forth any evidence creating an issue of fact as to whether his injury was foreseeable. Smith's own testimony establishes the derail was consistently used without incident and his expert merely speculates that the alleged malfunction *could* have occurred despite uncontroverted evidence that on every other occasion the derail functioned properly.

Further, Dr. Kress's testimony regarding the general usage of flop derails precludes a finding that BNSF negligently furnished defective or unsafe equipment. Because no evidence has been presented to create an issue of fact as to whether the subject derail was reasonably safe and suitable for its use, summary judgment is appropriate.

It is therefore **ORDERED** that BNSF's Motion for Summary Judgment is GRANTED. Because the court finds BNSF is entitled to summary judgment, the pending Motion to Exclude need not be addressed and is denied as moot. This is case is dismissed with prejudice.

**SO ORDERED**, this the 29th day of October, 2021.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE